IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02821-MSK-MEH

ARMSTRONG TRANSPORT GROUP, INC.,

　　　　Plaintiff,

v.

TR TOPPERS, INC.,

　　　　Defendant/Third-Party Plaintiff,

v.

ARMAN TRANSPORT, LLC, and
NEW LIFE LIMITED,

　　　　Third-Party Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

　　　　Pending before the Court is Third-Party Plaintiff TR Toppers, Inc.'s Second Renewed Motion for Default Judgment against Third-Party Defendant New Life Limited [filed December 5, 2013; docket #92]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to this Court for recommendation. (Docket #84.) For the reasons stated herein, the Court recommends that the motion be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after

# FINDINGS OF FACT

1. Plaintiff Armstrong Transport Group, Inc. ("ATG") is a North Carolina corporation with its principal place of business in Concord, North Carolina.

2. Defendant TR Toppers, Inc. ("TR Toppers") is a Colorado corporation with its principal place of business in Pueblo, Colorado.

3. Third-Party Defendant New Life Limited ("New Life") was an Illinois corporation that dissolved in January 2013.

4. TR Toppers contracted with ATG between August and September 2012 to arrange for the transportation of 24 shipments in interstate commerce. (Docket #1.) TR Toppers did not pay the total amount charged by ATG for transportation.

5. On or about August 14, 2012,[2] New Life delivered a shipment of berries to TR Toppers. (Docket ##92-1 and 92-7.) The berries were delivered above the specified temperature and as a result, the berries were damaged and could not be used.[3] *Id*. The total value of the

---

being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2] TR Toppers' Third-Party Complaint alleges that New Life delivered the berries on August 16, 2012. (Docket #11.) However, the bill of lading and the purchase order, which are attached as exhibits to the Motion for Default Judgment both state an August 14, 2012 shipment. (Dockets ## 92-1 and 92-7.) The discrepancy is relevant only for the purpose of calculating prejudgment interest.

[3] TR Toppers' Third-Party Complaint alleges that New Life delivered a shipment of berries with no seal or lock, and that another carrier, Arman Transport, LLC, delivered a shipment of berries above the specified temperature. (Docket #11.) The Motion for Default Judgment states that the berries delivered by New Life were unusable because they were above the specified temperature; the exhibits - the bill of lading, and an affidavit by TR Toppers' Chief Operating Officer - support a finding that the berries were damaged because they were above the specified temperature. (Docket #92.) There is no evidence supporting the original allegation that the berries were unusable because they were delivered with no seal or lock.

berries was $27,588.60. *Id.*

## PROCEDURAL HISTORY

ATG initiated this action for breach of contract against TR Toppers on October 24, 2012. (Docket #1.) ATG maintains that it upheld its side of the bargain by making the appropriate shipping arrangements with federally licensed motor carriers; it filed this lawsuit to collect $88,222.42 in outstanding transportation charges. *Id.*

TR Toppers filed an Answer and Counterclaims on November 27, 2012. (Docket #10.) According to TR Toppers, ATG failed to select quality carriers, which resulted in several damaged shipments. *Id.* TR Toppers' counterclaims seek a declaration of rights and an award of damages arising from ATG's alleged negligence and breach of contract. *Id.*

In addition to its counterclaims against ATG, TR Toppers timely filed a Third Party Complaint against three carriers with whom ATG contracted, including New Life. (Docket #11.) TR Toppers contends that, to the extent it is liable to ATG for the unpaid invoices, New Life is liable to TR Toppers for the damaged shipment. *Id.*

The Clerk of the Court granted TR Toppers' motion for entry of default as to New Life on April 4, 2013. (Docket #54.) TR Toppers filed a motion for default judgment as to New Life on May 23, 2013, which it later withdrew. (Docket #55.) TR Toppers filed a renewed motion for default judgment on September 17, 2013, which the Court denied for failure to demonstrate service of the motion upon New Life. (Dockets ##83, 91.) The present second renewed "Motion for Default Judgment" was filed on December 5, 2013 with a certificate of service upon New Life at its last known address. (Docket #92.) Since being served by the Illinois Secretary of State on February 19, 2013 (docket ##92-2 and 92-6), New Life has had nearly a year to answer or otherwise respond to TR Toppers' claims. Additionally, New Life has not responded to the present motion

within twenty-one days as required by D.C. Colo. LCivR 7.1C.

Stipulations of dismissal have been filed between TR Toppers and ATG, and TR Toppers and the two other Third-Party Defendant carriers: Arman Transport, LLC and USKO Express, Inc. Dockets ##85-88.

## LEGAL STANDARD

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides that: "[t]he court may conduct hearings ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2) (2013). A court need not conduct such a hearing, in regards to damages, "only if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Held v. Shelter Sys. Group Corp.*, 16 F.3d 416, 1994 WL 47157, at *1 (10th Cir. 1994) (unpublished) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)). Here, the Court concludes that the exhibits and affidavits attached to the Motion for Default Judgment demonstrate that the jurisdictional requirements for default judgment are satisfied and the damages amount is mathematically calculable. Thus, the Court believes a hearing is unnecessary and would only serve to increase the costs and fees already incurred in the prosecution of this action. The Court makes its recommendation on the record alone.

After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos,* 2008 WL 576245, *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)) (unpublished). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equipment Sales, Inc.,* 2007 WL 437762, *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith,* 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## **LEGAL ANALYSIS**

With the preceding legal standards in mind and before considering whether damages are to be assessed in this case, the Court addresses whether Plaintiff has established jurisdiction and whether its claim states a legal basis for relief.

**I.    Jurisdiction**

In determining whether entry of default judgment is warranted, the court must first consider

personal and subject matter jurisdiction. *See, e.g., Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("A judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties."). "Rule 4 service of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served." *Okla. Radio Assos. v. F.D.I.C.*, 969 F.2d 940, 943 (10th Cir. 1992) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of jurisdiction, and "[t]he party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) (noting that "[t]he party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction"). The Court will first address subject matter jurisdiction, then personal jurisdiction, and finally the assertion of jurisdiction through service of process.

### A.     *Subject Matter Jurisdiction*

TR Toppers brings claims against New Life under 49 U.S.C. § 14706(a)(1) (2013), also known as the Carmack Amendment. "A civil action under [the Carmack Amendment] may be brought against a delivering carrier in a district court of the United States or in a State court." 49 U.S.C. § 14706(d)(1). District courts "have original jurisdiction of an action brought under [the Carmack Amendment] ... if the matter in controversy for each receipt or bill of lading exceeds $10,000 exclusive of interest and costs." 28 U.S.C. § 1337(a) (2013). The matter in controversy between TR Toppers and New Life is $27,588.60 before interest and costs. Thus, the Court has original jurisdiction under the Carmack Amendment.

The Court also has supplemental jurisdiction because there is diversity jurisdiction between

ATG and TR Toppers. *See Reinhart Oil and Gas, Inc., v. Excel Directional Tech., LLC*, 463 F.Supp.2d 1240, 1262 (D. Colo. 2006) ("A federal district court has supplemental jurisdiction over a defendant's proper Rule 14(a) claim against a third-party defendant without regard to whether an independent basis of jurisdiction exists, as long as the court has jurisdiction over the main claim between the original parties.") (quoting 15 JAMES MOORE, MOORE'S FEDERAL PRACTICE § 106.42[1] (3d ed.1997)). Pursuant to 28 U.S.C. § 1332 (2013), district courts have original jurisdiction in civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. Here, ATG and TR Toppers are from different states (North Carolina and Colorado, respectively), and the matter in controversy between ATG and TR Toppers is $88,222.42.

Accordingly, subject matter jurisdiction exists because the claim against New Life arises under federal law and the claim between the original parties is based on diversity jurisdiction.

### B.   *Personal Jurisdiction*

A federal court sitting in diversity may only assert personal jurisdiction over a defendant if two criteria are met. "First, a federal district court may only exercise personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *United States v. Botefuhr,* 309 F.3d 1263, 1271 (10th Cir. 2002) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Second, an exercise of personal jurisdiction under state law must comport with the Fourteenth Amendment's due process clause. *Id.* In Colorado, only one inquiry is necessary, as the Colorado long-arm statute "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005).

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit

conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Group, Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation marks omitted). If the defendant has sufficient contacts, the court then proceeds to asking "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances. *Id.* (citation and some quotation marks omitted).

The "minimum contacts" test may be met in either of two ways. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."). Here, the "minimum contacts" test is satisfied because New Life purposefully directed its activities at Colorado residents when it delivered a shipment of berries to TR Toppers in Colorado, and the cause of action arises from that shipment. *See Benton*, 375 F.3d at 1076.

The Court next inquires whether the exercise of jurisdiction offends "traditional notions of fair play and substantial justice." *TH Agric.*, 488 F.3d at 1292. "This determination requires a case-

specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state." *Id*. Among the factors a court may consider in determining reasonableness are (1) the forum state's interest in resolving the controversy, (2) the burden on the defendant, and (3) the plaintiff's interest in attaining effective and convenient relief. *Id*.

First, Colorado has a strong interest in resolving controversies that arise from business transactions and contracts within the state. Indeed, Colorado has asserted this interest by providing for jurisdiction to the maximum extent permitted under the Due Process Clause. C.R.S. § 13-1-124(1); *Found. for Knowledge in Dev. v. Interactive Design*, 234 P.3d 673, 678 (Colo. 2010). Second, although there is undeniably a burden to a defendant like New Life which resides outside of Colorado, New Life had fair warning that agreeing to deliver goods to a Colorado business in Colorado would subject it to Colorado's jurisdiction. *See New Frontier Media, Inc. v. Freeman*, 85 P.3d 611, 613 (Colo. App. 2003) ("[D]ue process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a remote forum."). Third, TR Toppers naturally has a strong interest in litigating the case in Colorado, where it is based. Accordingly, the Court finds that it is reasonable to exercise personal jurisdiction over New Life in this case.

### C. *Service of Process*

Typically, the Court need not address service of process because the Clerk of the Court determines proper service before entering default. However, because of the nature of the issues raised in TR Toppers' motion, the Court will address whether service was proper.

"[S]ervice of process under Fed. R. Civ. P. 4 provides the mechanism by which a court ... asserts jurisdiction over the person of the party served." *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008) (quoting *United States v. Bigford*, 365 F.3d 859,

865 (10th Cir. 2004)).  A corporation may be served in a judicial district of the United States by following state law for serving a summons in the state where service is made.  Fed. R. Civ. P 4(h)(1)(A) and 4(e)(1).  Illinois law provides that the Secretary of State shall be appointed a corporation's agent for service of process when the corporation has been dissolved and the corporation's agent cannot be found with "reasonable diligence."

TR Toppers served New Life through the Illinois Secretary of State on February 19, 2013.  (Docket ##92-2 and 92-6.)  New Life was involuntarily dissolved on January 11, 2013.  (Docket #92-3.)  TR Toppers' process server stated in an affidavit of non-service that he traveled to the address for New Life's registered agent. (Docket #92-5.)  The man who answered the door told the server that there was no one at the address with the registered agent's name and slammed the door in the server's face.  *Id*.  The server reported that a car parked in the driveway was registered to the registered agent.  *Id*.  The Court finds that service to New Life through the Illinois Secretary of State was proper because New Life was a dissolved corporation and its agent could not be found with reasonable diligence.

For the reasons stated above, the Court concludes it may exercise personal jurisdiction over New Life and subject matter jurisdiction over this case.

## II.     Claims for Relief

TR Toppers alleges that New Life's damaged berry delivery constituted (1) negligence, (2) a breach of contract, and (3) a violation of the Carmack Amendment.

First, the elements of a negligence claim in Colorado are (1) the existence of a legal duty by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) injury to the plaintiff, and (4) sufficient causal relationship between the defendant's breach and plaintiff's injuries.  *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1015 (Colo. 2006).

TR Toppers alleges that New Life, as the carrier charged with shipping the berries, had a legal duty to deliver the berries in a usable condition. TR Toppers further alleges that the berries were unusable. This allegation is supported by the bill of lading, which states that the berries were measured at 54 degrees instead of the specified -10 degrees. (Docket #92-1.) The damaged berries injured TR Toppers because it paid for the berries but was unable to use them. Taking its allegations as true, TR Toppers has established a negligence claim against New Life.

Second, to succeed on a breach of contract claim in Colorado, a party must prove the following elements: (1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) resulting damages to the plaintiff. *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F.Supp.2d 1069, 1085 (D. Colo. Sept. 2013). TR Toppers alleges that it contracted with ATG to deliver berries for TR Toppers' benefit. ATG contracted with New Life to deliver the berries to TR Toppers; TR Toppers was a third-party beneficiary of the contract between ATG and New Life. The allegations, supported by a bill of lading and affidavit from TR Toppers' Chief Operating Officer, indicate that the berries were delivered well-above specified temperatures, rendering them unusable. (Dockets ##92-1 and 92-7.) TR Toppers was damaged to the extent that it owed ATG for the cost of the berries and shipment, or $27,588.60. Indeed, ATG initiated this lawsuit to recover the unpaid balance on that contract. TR Toppers claims that it was justified in its non-performance because the berries were delivered in an unusable condition. The Court finds that the allegations - which are deemed true for purposes of this motion - establish a breach of contract against New Life.

Third, under the Carmack Amendment, motor carriers are liable for "the actual loss or injury to the property caused" by the carrier. 49 U.S.C. § 14706(a)(1). The allegations, considered with the affidavits and exhibits attached to the Motion for Default Judgment, establish that the carrier,

New Life, caused damage to the berries. The amount of damages will be considered in more detail in the section below.

The Court concludes that TR Toppers is entitled to default judgment against New Life for all three claims alleged in its Third-Party Complaint.

**III.   Damages**

TR Toppers seeks a total amount of $30,159.19, consisting of $27,588.60 in principal damages, $2,400.59 in interest through the date of filing its Motion for Default Judgment, and $170.00 in costs. TR Toppers also requests interest at the statutory rate of 8% incurred from the date of filing until the judgment has been satisfied.

TR Toppers attached a purchase order for berries valued at $27,588.60. (Docket #92-7.) The purchase order number, as well as the description of the berries, matches the information contained in the bill of lading. TR Toppers also attached invoices for process service fees totaling $170.00. (Docket #92-9.) TR Toppers' Chief Operating Officer stated in an affidavit that the company suffered damages of $27,588.60 from the berry delivery, and $170.00 in costs. (Docket #92-8.) The Court finds this evidence sufficient to establish that TR Toppers suffered damages in the principal amount of $27,588.60 and $170.00 in costs.

The Motion for Default Judgment states that the date of loss was August 16, 2012 and TR Toppers apparently calculates interest based on that date. However, the shipment date on the bill of lading and the purchase order due date both state August 14, 2012. The Court finds that TR Toppers' $2,400.59 is based on an erroneous date of loss, and instead calculates interest based on an August 14, 2012 date of loss that is supported by the evidence. From the August 14, 2012 shipment date to the September 17, 2013 filing of this motion, the $27,588.60 in principal damages has accrued $2,412.68 in interest. *See* 28 U.S.C.A. § 1961 (2013). Thus, the Court denies in part

the portion of the motion requesting $2,400.59 in interest.

The Court concludes that TR Toppers is entitled to a default judgment against New Life for the amount of $30,171.28 plus post-judgment interest at the rate specified in 28 U.S.C. § 1961.

## **CONCLUSION**

Based on the foregoing, the Court **RECOMMENDS** that Third-Party Plaintiff TR Toppers, Inc.'s Second Renewed Motion for Default Judgment against Third-Party Defendants New Life Limited [filed December 5, 2013; docket #92] be **GRANTED IN PART AND DENIED IN PART** and that judgment be entered against New Life in the total amount of thirty thousand, one hundred seventy-one dollars and twenty-eight cents ($30,171.28), in addition to post-judgment interest at the rate specified in 28 U.S.C. § 1961 until the total amount is satisfied.

Respectfully submitted at Denver, Colorado, this 6th day of January, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge